## Barnett v. Commonwealth.

(Decided September 26, 1922.)

### Appeal from Bell Circuit Court.

1.  Indictment and Information—Robbery—Assault With Intent to Rob.—An indictment alleging that the defendant did unlawfully, wilfully, "feloniously, and with intent to rob T. A. McDaniel and G. C. Woodson of money and things of value, assault and hold up said parties with a pistol and put them in fear," sufficiently charged the offense defined and denounced as a felony by section 1160, Kentucky Statutes, the words "feloniously and with intent to rob" used in the indictment having the same meaning as the words "with a felonious intent to rob," contained in the statute.
2.  Indictment and Information—Rule for Testing Sufficiency.—The rule for testing the sufficiency of an indictment for a statutory offense is thus declared by the Criminal Code, section 136: "The words used in a statute to define an offense need not be strictly pursued in an indictment, but other words conveying the same meaning may be used."
3.  Criminal Law—Drunkenness as Defense—Instructions.—Drunkenness as a defense or excuse for crime is not regarded by the law with favor; and if this defense is made, the defendant must support it by some evidence other than his mere word, when, as in this case, his word is contradicted by his own acts as well as the evidence of all other witnesses testifying. Under the evidence in this case the failure of the trial court to give an instruction to the jury upon the question of drunkenness as a defense, was not error.

J. G. ROLLINS for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Under an indictment charging him with an assault with felonious intent to commit robbery, the appellant, George Barnett, by verdict of a jury, was found guilty of the crime and his punishment fixed at confinement of one year in the penitentiary. He was refused a new trial, and has appealed from the judgment entered upon the verdict. The first ground urged for a reversal of the judgment is alleged error of the trial court in overruling the appellant's demurrer to the indictment. The want of merit in this contention will appear from a mere comparison of the language of the indictment with that of section 1160, Kentucky Statutes, defining the crime charged. The statute provides: "If any person with an offensive weapon or instrument shall unlawfully and maliciously assault, or shall by menace, or in or by any forcible or violent manner, demand any money, goods, chattels, bond, bill, deed or will, or other evidence of right, or anything of value from any other person, with a felonious intent to rob or commit robbery upon such person, he shall be confined in the penitentiary not less than one nor more than two years."

The indictment in its formal, accusatory phraseology substantially adopts and follows the language of the statute, and, in addition, alleges the commission by the accused of the offense charged before the finding of the indictment, the acts alleged as constituting same being that he did "feloniously and with intent to rob T. A. McDaniel and G. C. Woodson of money and things of value assault, hold up said parties with a pistol and put them in fear." The validity of the indictment is not, as claimed by counsel for appellant, affected because of the use in the indictment of the words "feloniously and with intent to rob," instead of the words "with a felonious intent to rob" employed by the statute. The words used convey no other meaning than that the acts constituting the crime for which appellant was indicted were committed with a felonious intent; the words "feloniously" and "intent" being so immediately connected by the conjunction "and" as to set forth the felonious intent essential under the statute to constitute the offense charged as completely as if such intent had been indicated by the use of the words "with felonious intent," contained in the statute. Although an offense is not charged in the precise words used in the statute defining it, if it is alleged in words conveying the same meaning it will be,

sufficient. This rule is expressly declared by the Criminal Code, section 136, which provides:

"The words used in a statute to define an offense need not be strictly pursued in an indictment, but other words conveying the same meaning may be used." (Moore v. Commonwealth, 92 Ky. 630; Gratz v. Commonwealth, 96 Ky. 162.) Obviously, the action of the trial court in overruling the appellant's demurrer to the indictment was authorized and, therefore, free of error.

It is also insisted for the appellant that the trial court erred in failing to instruct the jury upon the law regarding drunkenness as a defense. Whether such instruction was authorized must be determined from the evidence heard on the trial, which substantially developed the following facts: T. A. McDaniel, his wife and G. C. Woodson, while riding at night in McDaniel's automobile from Middlesboro to Pineville, in Bell county, were halted and held up on the public highway near the village of Excelsior by the appellant, who with a loaded pistol in his hand pointed at them, so stood in the way of the automobile as to prevent its passing him. When McDaniel stopped the car the appellant took a position at the side and front of the car near the wife of McDaniel, who with her husband occupied the front seat, pointed his pistol at her and ordered the parties to hold up their hands. In stopping the car McDaniel succeeded in securing, from its receptacle near him, his pistol which, by putting his arm around his wife, he thrust in the appellant's face and at the same time caught with his other hand that of the appellant containing the pistol, which he continued to hold until Woodson could get out of the car, assist in taking the pistol from appellant, and search his person for other weapons, which it was found he did not have.

Upon grabbing the appellant's hand McDaniel commanded him to drop the pistol, to which the appellant replied, "I won't shoot your wife." McDaniel then asked appellant, "What are you doing here?" To this question the latter answered, "Getting money just as they get it in town." After disarming and subduing the appellant as stated, McDaniel and Woodson, notwithstanding his resistance, put him under arrest and took him in the car back to Middlesboro, where he was placed in jail.

Immediately before his stopping of McDaniel's car it was made to appear from the testimony of one John Ballard that appellant had apparently attempted to stop

his automobile, which was a few yards in advance of McDaniel's car, by firing upon or across the highway a single shot from his pistol, for which, however, Ballard failed to stop. This shot was heard by the persons in the McDaniel car, and when the latter car was stopped by appellant Ballard stopped his car until appellant's capture was effected by McDaniel and Woodson, and though he heard but little of what was then said by the parties he saw much of what happened. 

The facts stated were furnished by the testimony of McDaniel, Woodson and Ballard and, in the main, admitted by the appellant in testifying. in his own behalf. He denied, however, that his purpose in holding up the car and threatening its inmates was robbery, and claimed that he was then drunk and by reason thereof legally irresponsible for his conduct. His explanation of what he then did was that he thought the automobile of McDaniel was that of one Zone Bird, in which he claimed to have ridden in the afternoon from Middlesboro to Excelsior, and in which he expected to go again to Middlesboro upon the return of Bird from some place beyond Excelsior. But Bird was not introduced to corroborate the statement of the appellant that he had gone that day from Middlesboro to Excelsior in his automobile, or was later to go back to Middlesboro therein, nor was there a showing of any effort to obtain such testimony from Bird or other person, or any reason for the failure to do so. Indeed, the defense of drunkenness was not even supported by the appellant's own testimony, which shows not only corroboration of that of the Commonwealth's witnesses by his acts and conduct at the time of the attack upon the inmates of the McDaniel car, but also the further corroboration furnished by his admitted recollection of what then occurred, which was too vivid to have been recalled by one so drunk at the time of their occurrence as to have been mentally incapable of knowing the turpitude of his act, or to be unable to conceive and harbor a motive to commit robbery. He did not claim to be ignorant of what he then did, nor can it be concluded, in the absence of satisfactory proof to that effect, that the one or two afternoon drinks of whiskey he admitted taking in Middlesboro several hours previously could have produced in him such intoxication as would have made him incapable of controlling his conduct at the time of stopping the McDaniel car. The latter and Woodson both testified that his breath smelled of whis-

key and Ballard's testimony was to the same effect; but none of them regarded him as drunk, or from that or any other cause incapable of knowing the nature and consequences of his acts.

In Hays v. Commonwealth of Kentucky, 171 Ky. 291, the alleged drunkenness of the defendant was the defense particularly relied on to excuse the crime charged, yet we held that the failure of the trial court to give an instruction submitting that ground of defense to the determination of the jury was not reversible error, in doing which we, in part, said:

"We do not think the evidence in this case was sufficient to support an instruction on the subject of drunkenness. It is true the defendant testified that he was drunk, but, as said in Brennon v. Commonwealth, 169 Ky. 815, 'there is a large difference between being drunk and being drunk to such an extent as not to know the acts one commits or their quality.' The defendant may have been drunk, but, nevertheless, judging from his evidence, he knew everything that he did as well as the things that he did not do, and attempted to establish by his evidence every fact necessary to show his innocence of the crime charged. . . . A criminal who has sufficient mind and memory to give a connected narrative of everything that happened and to relate in detail all the facts and circumstances that might excuse his conduct, is not in a good position to insist that he was entitled to an instruction on the subject of drunkenness merely because he testifies he was drunk. The unsupported evidence of the defendant that he was merely drunk, when all the facts and circumstances in the case show that he was sober, will not entitle him to an instruction on this subject, nor will the failure to so instruct be prejudicial error. The defense of drunkenness as an excuse for crime is not looked on with much favor; and when a defendant undertakes to assert a defense like this he must support it by some evidence more than his mere word when his word is contradicted by his acts, which show that he was sober and not drunk."

Clearly the facts of the instant case bring it safely within the rule stated in the opinion of the case, *supra.* Indeed, the facts here present a stronger reason for the application of the rule in question, for the showing made by appellant's own acts and admission of the absence of the intoxication of which he claims to have been the victim at the time of the commission by him of the crime

charged, is supplemented and supported by the witnesses for the Commonwealth. It therefore follows from what has been said, that the failure of the trial court to give the instruction respecting the defense of drunkenness was not error.

We find no prejudicial error in the admission or rejection of evidence by the trial court, and as, in our opinion, the appellant obtained a fair trial in the court below, the judgment is affirmed.