**Clifford Clyde ALSIP, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 23, 1972.

Coleman D. Moberly, London, for appellant.

Ed W. Hancock, Atty. Gen., John C. Ryan, Special Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Commissioner.

The appellant, Clifford Clyde Alsip, was convicted of the offense of involuntary manslaughter in the first degree and sentenced to confinement in the penitentiary for a period of seven years.

On this appeal he alleges the following grounds for reversal of the judgment: (1) he was entitled to a directed verdict on his plea of self-defense, (2) the jury was not properly instructed and (3) incompetent testimony was admitted as to cause of death.

On the occasion of the shooting the appellant was visiting at the home of his brother, the victim of the shooting. For three or four hours before the shooting the appellant had been in the front yard talking and drinking with his nephew. There was no testimony however that appellant was intoxicated.

The deceased was drinking heavily and stayed indoors during most of appellant's visit. On at least one occasion however he came outside in a quarrelsome mood. According to appellant the deceased said to him "What the goddamn hell are you doing here?" Deceased then took a drink of whiskey, stomped around awhile and went back into the house. Sometime later as appellant was preparing to leave the premises the deceased again came outside. The appellant's version of the second encounter is as follows:

"* * * And directly here he come back. And he got up pretty close coming, and he said, 'Get up, God damn you.' And I just raised up. I said, 'What's the matter with you?' I seen he was mad then. And I said, 'Well, if that's the way it's going to be I'll just go home.' Well, I started to the car and got down to the car—almost to the car door and he grabbed me and wheeled me around, and shook me, choked me, and throwed me right back over the hood of the car and raring me back over it, and hit me two licks in the stomach. Then he started backing me back up the road a shaking me. And he backed me as fer as across this house from my car up towards his drive—up towards his porchway, and hit me two more licks in the stomach and then knocked me down and hit me in the face. And then landed right on top of me. So, I was shook up pretty bad. From there on I don't know what was going on."

During the struggle which followed some shots were fired, at least two of which struck the decedent. He was dead when the coroner arrived.

The appellant's pistol was found at the scene after the shooting. It contained three spent shells. Ballistics tests established that a bullet found on the ground at the scene was fired from appellant's pistol.

On the trial, the appellant neither admitted or denied that he fired the shots, nor did he claim to have been in fear of his life or of great bodily harm, it being his contention that after he was struck by his brother he had no recollection of what happened and certainly no intention to kill him. He contends however that he was entitled to a directed verdict because the uncontradicted evidence clearly established that he was acting in self-defense. He relies upon Holcomb v. Commonwealth, Ky., 280 S.W.2d 499 (1955) and Taul v. Commonwealth, Ky., 249 S.W.2d 45 (1952).

The cases cited are not helpful to appellant because in each of them the accused at the trial specifically admitted the killing and claimed justification by reason of self-defense. Here the appellant made no such admission nor did his testimony necessarily indicate that he was acting in self-defense.

■ An essential element of the right of self-defense is that one claiming the right must believe at the time he exercises it that there exists a present danger to his life or a great bodily harm to him. Roberson's New Kentucky Criminal Law and Procedure, Section 304.

■ In this case the appellant did not testify that his actions were motivated by the necessity to protect himself from danger to his life or from bodily harm nor that the force he used was believed necessary by him to avert any such danger. He was not entitled to a directed verdict of acquittal.

■ Appellant also contends that the instructions were improper. He made no specific objection to the instructions when given and the only reference to the instructions in his motion and grounds for a new trial was as follows:

"The court erred in instructions No. 1, No. 2, No. 3, No. 4, No. 5 and No. 6 as given to the jury and failed to correctly define the law of the case."

Unless specific objections to instructions are made at the trial or set forth in the motions and grounds for a new trial there can be no review of alleged errors in the instructions. RCr 9.54. Fornash v. Commonwealth, Ky., 471 S.W.2d 700 (1971); Greenville v. Commonwealth, Ky., 467 S.W.2d 765 (1971) and Hunt v. Commonwealth, Ky., 466 S.W.2d 957 (1971).

■ The final allegation of error is that the testimony of a deputy coroner, an undertaker with no medical qualifications, was improperly admitted to establish the cause of death.

In Harvey v. Commonwealth, Ky., 318 S.W.2d 868 (1958), we held that where a decedent was shot near the middle of his body, immediately fell and died within less than an hour no medical evidence as to cause of death was required. The decedent here was shot in the chest and died before his body was removed from the premises. Although the testimony was incompetent, no prejudice resulted to appellant since no medical testimony as to the cause of death was necessary. Harvey v. Commonwealth, supra. Dennis v. Commonwealth, Ky., 464 S.W.2d 253 (1971).

The judgment is affirmed.

All concur.