## Cook v. Commonwealth.

Oct. 3, 1939.

L. L. Hindman, Judge.

Turner & Turner for appellant.

Hubert Meredith, Attorney General, and J. M. Campbell, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The appellant, J. H. Cook, is appealing from a judgment on a verdict finding him guilty of the crime of breaking and entering into the office of the county court clerk of Ballard county, with intent to take, steal and carry away articles of value, and fixing his punishment at two years in the state penitentiary. He sets forth several grounds upon which he urges reversal, one of which is that the first instruction given by the court was prejudicially erroneous because the instruction was given under Section 1162 of the Statutes, whereas, the indictment should have been drawn under Section 1164 and the instructions given thereunder. Having reached the conclusion that the court committed a reversible error in instructing the jury as to the penalty to be ap-

plied in the event Cook was found guilty, we deem it unnecessary to discuss the other grounds upon which reversal is urged.

Cook was 62 years of age at the time of his trial in 1938. He was the tax commissioner of Ballard county, and had been serving in that capacity for 13 years. He admitted taking $2 from the money drawer in a desk in the county clerk's office during the noon hour of June 28, 1938, but denied that he had taken any other money from this office, or that he broke into the office with the intent to steal. Briefly stated, the conditions leading up to Cook's arrest are: Garlene White, county court clerk of Ballard county, had been missing money from his office for some time; the losses amounting to approximately $600. He arranged with a state patrolman to watch his office during the noon hour on June 27th. The patrolman was hidden in the clerk's office the next day when Cook entered the office. He took Cook in custody, and, upon finding the county attorney's office closed, he and Cook went to White's home. These three parties were together a good part of the afternoon. Cook finally agreed to give White a mortgage on his house and lot for $600, but he did not admit taking that amount of money. Several witnesses for the Commonwealth testified that Cook had told them that he had taken $42 in all from White's office. He denied, however, that he took any money therefrom, save the $2 referred to heretofore. He stated that he gave White the mortgage to avoid any publicity to the incident, and with the understanding that no charges would be preferred against him. At any rate, no charges were preferred against him until a few days after June 28th.

The tax commissioner's office adjoins one of the rooms making up the office of the county clerk, and there is a door between the two. White had given Cook a key to a door leading into a hall and into which one of the rooms in the clerk's office and the commissioner's office open. Cook's testimony was to the effect that White knew that he had a key to the door which he entered at the time he took the money. He testified that he entered the clerk's office to get some information out of one of his tax books which the deputy clerk had been using.

The indictment charged Cook with unlawfully, willfully and feloniously entering and breaking into the office of the county clerk, which office is located in the

court house of Ballard county, with the felonious intent to take, steal and carry away, money, and that he did feloniously take, steal and carry away therefrom money which the clerk was "entitled to collect and was personally responsible therefor and in reality being his own personal property." While it appears that this indictment may have been drawn with Section 1162 of the Statutes in mind in view of the manner. in which the trial was conducted and the instructions given by the court, we think that it covers the offense dealt with in Section 1164 of the Statutes and is good under that section.

Section 1162 provides in part:

"If any person shall feloniously take out of or from any church, chapel, or meeting-house, school house, court house or other public building, any goods or chattels, or other thing of value belonging thereto. * * *"

The remainder of the section relates to robbing a person in his dwelling house, and to house breaking. Any person found guilty of committing the offense described in this section shall be confined in the penitentiary not less than two nor more than ten years. Among other things, Section 1164 provides that, if any person shall feloniously, in the night or day, break into an office with intent to steal, or shall feloniously take therefrom or destroy any goods, wares or merchandise or other thing of value, he shall be confined in the penitentiary not less than one nor more than five years. The gravamen of the offense set out in Section 1162 is the taking of property belonging to any of the places or buildings mentioned in the part of the statute quoted, while that of Section 1164 is the felonious breaking with intent to steal, or felonious taking.

It is to be noted that the indictment set forth that the money belonged to the county clerk. He testified that the $2 taken by Cook belonged to him personally. The first instruction given by the court is as follows:

"The court instructs the jury that if you believe from the evidence in this case to the exclusion of every reasonable doubt that the defendant, J. H. Cook, in the County of Ballard, State of Kentucky, and before the finding of this indictment did unlawfully, willfully and feloniously break and enter into the office of the County Court Clerk of Ballard County, which office is located in the Court House

at Wickliffe, Ballard County, Kentucky, and which office at said time was occupied by the duly and regularly elected County court clerk, James Garlene White, for said County with the felonious intent to take, steal and carry away therefrom articles of value, to wit: Money, and did willfully and feloniously take and carry away good and lawful money of the U. S. A. which was then the property of the said County Court Clerk, James Garlene White, then you will find the defendant guilty and fix his punishment at confinement in the State Penitentiary for not less than two years nor more than ten years within your sound discretion.''

Had this instruction included the penalty provided in Section 1164 of the Statutes, rather than that provided in Section 1162, it would have been good. In this connection, our examination of the record leads us to the conclusion that there was sufficient competent evidence to warrant the submission of the case to the jury under proper instructions.

In discussing the offenses covered in Sections 1162 and 1164 of the Statutes it was said in the case of Thomas v. Commonwealth, 150 Ky. 374, 150 S. W. 376, 378:

''* * * In other words, one cannot, under an indictment charging him with feloniously breaking into a storehouse, be convicted upon proof of his having broken into a dwelling house, which is a wholly different offense or crime defined by Section 1162, Kentucky Statutes, and the punishment for which, as therein provided, is greater than that prescribed for breaking into a storehouse, being confinement in the penitentiary not less than two nor more than ten years. It will thus be seen that these are separate and distinct offenses or crimes, neither being a degree of the other. * * *'' See also Wallace v. Commonwealth, 162 Ky. 85, 172 S. W. 118.

It must be borne in mind that Cook was not charged with breaking into and entering the county court clerk's office with the felonious intent to take something of value belonging thereto, but rather he was charged with taking money which was the personal property of the county clerk. The case, therefore, is similar to that of Shanks v. Commonwealth, 248 Ky. 296, 58 S. W. (2d) 586, where the accused was convicted of the offense

denounced by Section 1164 of the Statutes and sentenced to one year in the penitentiary. He was charged with breaking into the sheriff's office and taking a quantity of whiskey and a shotgun therefrom.

Wherefore, for the reasons given herein, we are forced to the conclusion that the judgment must be and it is reversed for proceedings consistent with this opinion.